Marc P. Berger
Lara Shalov Mehraban
Robert A. Cohen
Michael Paley
Kevin P. McGrath
Tracy E. Sivitz
John P. Lucas
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, N.Y.  10281
(212) 336-0533
mcgrathk@sec.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                                Plaintiff,<br><br>        - against -<br><br>T. J. JESKY, ESQ. and<br>MARK DESTEFANO,<br><br>                                Defendants. | 18 Civ. 5980 (   )<br><br>**COMPLAINT**<br><br>**ECF CASE** |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

Defendants T.J. Jesky, Esq. ("Jesky") and Mark DeStefano ("DeStefano") (collectively,

"Defendants"), alleges as follows:

## SUMMARY OF ALLEGATIONS

1.       This action seeks to enjoin further illegal conduct by, and obtain certain other

relief from, Defendants Jesky and DeStefano, who collectively illegally obtained approximately

$1.4 million in a ten-day period from their unlawful offers and sales of securities into the public

market of UBI Blockchain Internet Ltd., which trades under the ticker symbol UBIA ("UBIA").

Even though the Defendants were required under the registration statement to sell their shares at a specific price that had been reported to the Commission and to the investing public, Defendants nonetheless sold their shares in the market for as much as thirteen times the required price.

2.     From about 2010 through 2016, UBIA was a shell company that claimed to be in the business of designing climate controlled units for the distributed production of energy. In early 2017, however, UBIA announced that it had entered a new business, to engage in "the research and application of blockchain technology with a focus on the Internet of things covering food, drugs and healthcare." The Defendants have been associated with UBIA since at least 2011.

3.     In October 2017, the Defendants arranged to receive UBIA shares in return for legal services rendered to UBIA by Jesky's law firm, including the firm's preparation of a registration statement with the Commission. Pursuant to that registration statement, UBIA sought to register the public resale of certain shares, including the shares issued to Jesky and DeStefano. The registration statement prepared by the Jesky firm required that all Class A shares sold pursuant to the registration statement had to be sold at a fixed price of $3.70 per share.

4.     Inexplicably, UBIA's stock experienced a dramatic increase after the Defendants acquired their shares, rising from approximately $4.00 per share on November 20, 2017 to a high of approximately $115.00 on December 15, 2017, even though UBIA had not issued any news releases that would have explained such an increase.

5.     As soon as the registration statement was declared effective on December 22, 2017, the Defendants began to unlawfully sell their shares at prices far in excess of the $3.70 price required by the registration statement. Between December 26, 2017 and January 5, 2018,

Defendants sold more than 50,000 of their UBIA shares into the public over-the-counter market ("OTC"). Jesky sold 24,995 UBIA shares at prices between $21.12 and $48.13, for total proceeds of $766,036. DeStefano sold 26,000 UBIA shares at prices between $21.56 and $48.40, for total proceeds of $798,473.

6.     The Defendants' unlawful sales only stopped when the Commission suspended trading in UBIA stock on January 8, 2018, based on questions about the accuracy of assertions in UBIA's SEC filings and the recent, unusual market activity in the company's stock.

7.     Defendants' offers and sales of UBIA securities between December 26, 2017 and January 5, 2018, none of which were made at the fixed price of $3.70 required by the registration statement filed with the Commission, were in violation of Sections 5(a) and (c) of the Securities Act of 1933 [15 U.S.C. § 77e(a) & (c)].

8.     The Commission seeks a judgment from the Court: (a) finding that the Defendants violated Section 5(a) and (c) of the Securities Act; (b) permanently enjoining the Defendants from violating Section 5(a) and (c); (c) ordering the Defendants to disgorge the proceeds generated from their unlawful sales of UBIA securities and pay prejudgment interest thereon; (d) requiring the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)]; and (e) granting such further equitable relief as may be appropriate or necessary for the benefit of investors.

## JURISDICTION AND VENUE

9.     The Court has jurisdiction over this civil enforcement action pursuant to Section 20(b) and (c) and Section 22(a) of the Securities Act [15 U.S.C. §§ 77t(b) & (c), 77v(a)]. The Defendants made use of the means and instruments of interstate commerce in connection with their acts, transactions, practices and courses of business alleged in this Complaint.

10.     Venue lies in the Southern District of New York pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] because certain of the acts, practices and courses of business constituting the violations described in this Complaint occurred in this District.  For example, two of the broker-dealers who acted as market makers or intermediate brokers for hundreds of trades involving Defendants' illegal UBIA securities sales were located in Manhattan, New York.  In addition, UBIA's agent for service of process, a purported company Vice-President, has a listed office address in Manhattan, New York.  He approved the removal of the restrictive legends from Defendants' UBIA shares before they were illegally sold.

## THE PARTIES

11.     The plaintiff Commission brings this action pursuant to the authority conferred on it by Section 20(b) and (c) of the Securities Act [15 U.S.C. § 77t(b) & (c)].

12.     Defendant Jesky, age 71, is a dual Mexican and U.S. citizen.  Jesky is an attorney licensed to practice law in Mexico (admitted July 2002) and in Illinois (admitted May 2017).  He has been licensed as a "foreign legal consultant" in California since 2014.  The Law Offices of T.J. Jesky have a listed address of 200 West Madison, Suite 2100, Chicago, Illinois.

13.     Defendant DeStefano, age 57, is a U.S. citizen who resides in Las Vegas, Nevada.  UBIA has disclosed that DeStefano had voting control of UBIA (under its former name) from June 2014 through October 2016.  Prior to 1988, DeStefano was a registered representative of a brokerage firm.  DeStefano was identified as the business affairs manager of Jesky's law firm in UBIA's registration statement.

4

<u>FACTS</u>

I.    **BACKGROUND**

14.    A company or person may only sell stock if they:  (a) register the sale pursuant to a valid registration statement that applies to the specific transaction described in the registration statement; or (b) sell the stock in a transaction that is specifically exempt from the registration requirement of Section 5 of the Securities Act.  A registration statement applies only to the specific transaction that is being registered.

15.    Once the Commission establishes a *prima facie* case that stock has been sold in a transaction that was not registered, the burden of proof shifts to the seller to establish that each sale of stock was sold in a transaction that is specifically exempt from the registration requirements of Section 5 of the Securities Act.

**Formation of UBIA**

16.    UBIA's corporate predecessor, JA Energy, was incorporated in Nevada in May 2010.  JA Energy claimed that it was in the business of "designing a suite of modular, self-contained, fully automated, climate controlled units for distributed production of energy," although it never sold any products.

17.    JA Energy reported its status as a shell company in a Form 8-K filed in May 2014.

18.    A shell company is defined in Securities Act Rule 144(i)(1)(i) as an issuer that has (1) no or nominal operations; and (2) either no or nominal assets, assets consisting solely of cash or cash equivalents, or assets consisting of any amount of cash and cash equivalents and nominal other assets.

19.     In October 2016, Individual A, a purported Hong Kong resident and the current chairman, CEO and majority shareholder of UBIA, invested $200,000 in JA Energy through his company, UBI Blockchain Internet, Ltd. (Hong Kong), to acquire approximately 99% voting control of the company.

20.     In November 2016, Individual A re-domiciled the company to Delaware and changed the company's name to UBI Blockchain Internet Ltd.

21.     In its Form 10-Q for the quarter ended February 28, 2017, UBIA for the first time disclosed an entirely new and vaguely defined business plan focusing on "the research and application of blockchain technology with a focus on the Internet of things covering areas of food, drugs and healthcare."

22.     According to a Form 8-K filed on May 16, 2017, UBIA purportedly agreed that day to acquire 100% ownership of a private Chinese corporation called Shenzhen Nova E-commerce, Ltd. ("Nova") through the issuance of 25 million shares of Class C (non-voting) stock.

23.     Nova purportedly operated "an online store in China selling a wide range of products including maternal and infant products, cosmetics, wine, household goods, digital and luxury products."

24.     On August 30, 2017, UBIA filed a Form 8-K to announce the Chinese government's purported approval of the Nova transaction and to disclose that UBIA was purportedly no longer a shell company.

25.     On September 5, 2017, UBIA wrote a letter to staff in the Commission's Division of Corporation Finance ("Corp Fin") acknowledging that UBIA was a shell company prior to its acquisition of Nova in August 2017.

**UBIA Files a Form S-1 Registration Statement**

26.     On May 9, 2017, UBIA filed a Form S-1 registration statement seeking to register a purported secondary offering of shares of Class A and Class C common stock by certain selling shareholders, including shareholders associated with UBI Blockchain Internet, Ltd. (Hong Kong).  As detailed below, the registration statement was amended several times before it was declared effective.

27.     As originally filed, the registration statement disclosed that selling stockholders would sell their Class C stock at a fixed price of $0.20 per share for the entire duration of the offering but contained no price for the Class A common stock.

28.     The registration statement noted that although the Class A common stock was quoted on the OTC market, there had been very little trading activity, and noted that the Class C stock was not listed on any exchange.

29.     The originally filed registration statement further stated that if and when a market develops for the company's common stock, the shares may be sold "at market prices prevailing at the time of the sale, at prices related to such prevailing market prices, at negotiated prices or at fixed prices, which may be changed."

30.     UBIA also identified all of the shareholders selling stock as underwriters.

31.     On June 5, 2017, staff from Corp Fin issued a comment letter to UBIA stating that the registration statement must include a fixed price at which the selling shareholders would sell their shares in the offering.   Specifically, Corp Fin noted that the offering appeared to be a primary offering by the company due to the fact that Individual A – the CEO and Chairman of UBIA, and the owner of 98% of the company's Class A common stock – was seeking to resell a

significant portion of the company's common stock.  Corp Fin went on to state "Because you are not eligible to conduct an at the market offering, you must include a fixed price for these shares."

32.     Securities Act Rule 415(a)(4) defines an "at the market offering" to mean an offering of equity securities into an existing trading market for outstanding shares of the same class at other than a fixed price.

33.     UBIA was not eligible to conduct a primary "at the market offering" pursuant to Securities Act Rule 415(a)(1)(x) and Rule 415(a)(4) because it was not eligible to use Form S-3 to register a primary "at the market offering."  The company was not eligible to use Form S-3 in part because it did not have an aggregate market value of voting and non-voting common equity held by non-affiliates, also known as a public float, of $75 million or more.   General Instruction I.B.1 to Form S-3 and the instruction thereto describe the calculation of aggregate market value in more detail.

34.     The reason for the requirement that a company must have a minimum public float to do an "at the market offering" is the concern that, without a sufficiently large float, the market cannot efficiently absorb information about the company and reflect it in the price.  *Revisions to the Eligibility Requirements for Primary Securities Offerings on Forms S-3 and F-3*, SEC Release No. 33-8878 (Dec. 19, 2007) at 9-10.

35.     In addition, the Commission has observed that "the securities of smaller public companies are comparatively more vulnerable to price manipulation than the securities of larger public companies, and may also be more prone to financial reporting error and abuses."  *Id.* at 10.

36.     UBIA did not contest Corp Fin's position that UBIA was not eligible for an "at the market offering" due to the fact that the offering being registered was in the nature of a primary offering.

37.     To the contrary, on July 5, 2017, in comments drafted by the Jesky firm, UBIA responded to Corp Fin's comments regarding a fixed price for the selling shareholders' shares by stating, "We have included a fixed price for the Class A Common Stock on the Prospectus cover page, and throughout the Registration Statement."

38.     UBIA, through the Jesky firm, added disclosures in at least seven places throughout the registration statement to the effect that, "The offering of the Class A Common Stock by the selling shareholders is at a fixed price of $3.70 per share . . . for the entire duration of the offering." This revised disclosure occurred in particularly prominent places, such as the prospectus cover page, and sections discussing the description of the offering, determination of offering price, selling stockholders, plan of distribution, and interests of named counsel.[1]

39.     Therefore, any Class A shares sold pursuant to the registration statement would have to be sold at $3.70 per share.

40.     Jesky authored an opinion letter dated December 11, 2017, attached as an exhibit to the amendment to the Form S-1 filed on December 12, 2017, in furtherance of UBIA's efforts to register the offering.

41.     An Amended Form S-1 registration statement was declared effective by the Commission on December 22, 2017.

---

[1] UBIA failed to remove one reference to sales at market prices in its amended registration statement. Although the Plan of Distribution section was amended to require the sale of the Class A common stock at a fixed price of $3.70 per share for the entire duration of the offering, UBIA failed to remove the original – and contradictory – language in the same section discussing sales at market and/or other prices if and when a market subsequently developed.

Jesky's and DeStefano's Involvement in UBIA

     42.     Jesky's and DeStefano's involvement with UBIA dates back to the early days of the company.

     43.     For example, in January 2011, Jesky and DeStefano were issued 823,669 and 793,334 shares of common stock in the company respectively, which combined equaled about 2.5% of all shares issued and outstanding.

     44.     According to a Form 8-K that the company filed in June 2014, DeStefano acquired control of the company in June 2014, when he was issued one million preferred voting shares, entitled to 50 votes per share, which gave DeStefano approximately 54% of the company's voting power, purportedly to satisfy a loan obligation to DeStefano.

     45.     DeStefano's control of UBIA, through his majority voting stake, ended in October 2016 when UBI Blockchain Internet, Ltd. (Hong Kong) invested in UBIA. In connection with that transaction, DeStefano's voting preferred shares were canceled.

     46.     In January 2017, DeStefano held 109,805 shares of UBIA common stock, half of which he transferred to Jesky in the same month. All of these shares, which are not the subject of this Complaint, were sold by DeStefano and Jesky before December 23, 2017.

UBIA Issues Restricted Shares to Jesky and DeStefano for Legal Services

     47.     On October 2, 2017, UBIA issued 33,000 shares of Class A common stock to Jesky; 39,000 shares of Class A common stock to DeStefano and 5,000 shares of Class A common stock to each of two other individuals ("Individual B and Individual C"), for a total of 82,000 shares, "in exchange for legal services from the Law Firm of T. J. Jesky."

     48.     The Form S-1 referred to Individuals B and C as "business consultants" for the Jesky law firm.

49.     The shares were issued with restrictive legends.

50.     The placement of the legend "Restricted" on a stock certificate indicates that the stock was acquired in an unregistered transaction and may not be resold unless in compliance with all applicable requirements for sale under the federal securities laws.  The term "restricted security" includes securities "acquired directly or indirectly from the issuer, or an affiliate of the issuer, in a transaction or chain of transactions not involving any public offering."  Securities Act Rule 144(a)(3)(i).

51.     On December 12, 2017 (after UBIA had amended the registration statement to include the $3.70 fixed price for the Class A shares), UBIA filed its fourth amendment to its Form S-1 registration statement, adding Jesky and DeStefano to the list of shareholders who would be selling Class A common stock pursuant to the Form S-1.

52.     Jesky and DeStefano, along with all of the other selling shareholders, were identified in the amended Form S-1 registration statement as "underwriters as defined under the Securities Act of 1933."

53.     Section 2(a)(11) of the Securities Act defines an "underwriter" to include "any person who has purchased from an issuer with a view to . . . the distribution of any security . . . ."

**Jesky's and DeStefano's Unlawful Sales of their UBIA Securities**

54.     On December 26, 2017, DeStefano and Jesky requested that UBIA's transfer agent remove the restrictive legends from their UBIA share certificates for the Class A common stock they received on October 2, 2017.

55.     DeStefano had hand-delivered to the transfer agent two certificates for his and Jesky's shares.

56.     The transfer agent also received two opinion letters signed by Jesky, as an attorney, in support of the legend removal for his and DeStefano's shares.

57.     Jesky's opinion letters, dated December 22, 2017, stated that the shares of UBIA common stock issued to Jesky and DeStefano were "free trading securities" and could be resold by them at will because they were registered by the Form S-1 made effective that day.

58.     In particular, he stated that both he and DeStefano had received shares for services on October 2, 2017 in lieu of cash payment and that the shares had been sold to them pursuant to Section 4(a)(2) of the Securities Act.  He then pointed to UBIA's filing of its Form S-1 registration statement on May 9, 2017, its subsequent amendments, and the SEC's issuance of a Notice of Effectiveness on December 22, 2017.

59.     The opinion letter for Jesky's shares further stated that: "The Company filed a Form S-1 Registration Statement, whereby it registered 33,000 of the shares issued to T.J. Jesky. These shares are now fully registered shares pursuant to Section 5 of the Securities Act of 1933, as amended.  Therefore, it is our opinion that the 33,000 shares of common stock held by T.J. Jesky are free trading securities, and T.J. Jesky may resell these securities at will."

60.     Jesky's opinion letter for DeStefano's shares was identical, except as to the name DeStefano and the number of shares issued to him.

61.     Later on December 26, 2017, an employee of the transfer agent emailed Jesky's December 22, 2017 opinion letters, as well as the transfer agent's form "Non-Affiliate Shareholder's Representations Letter" signed by each Defendant, to a purported UBIA vice-president with a Manhattan, New York office address, and requested that he review and approve the requests for removal of the legend from the stock certificates.

62.     The UBIA vice-president approved the removal of the restrictive legends from Defendants' shares based on the Form S-1 registration statement.

63.     After it received this approval, the transfer agent issued new certificates, with the restrictive legend removed, in accordance with the Defendants' directions.

64.     Jesky directed the transfer agent to divide his 33,000 UBIA shares into two certificates, one for 32,700 shares and the second for 300 shares, both in his name.  DeStefano directed the transfer agent to divide his 39,000 UBIA shares into two certificates, one for 36,000 shares and a second for 3,000 shares, both in his name.

**Contrary to the Representations in the Registration Statement, Jesky and
DeStefano Did Not Sell Their Shares at the Fixed Price**

65.     Jesky deposited his certificate for 32,700 UBIA Class A shares, and DeStefano deposited his certificate for 36,000 UBIA Class A shares, into their respective accounts at their brokerage firm on December 26, 2017.  As of that date, neither account held any other UBIA shares, and no additional UBIA shares were deposited after that date.

66.     UBIA's stock price experienced a dramatic increase prior to the Commission's order suspending trading on January 8, 2018.  The stock price rose from approximately $4 on November 20, 2017, to a high of approximately $115 on December 15, and was trading between $21 and $25 per share the business day prior to the trading suspension.

67.     Between December 26, 2017 and January 5, 2018, Jesky sold 24,995 shares of UBIA Class A common stock at prices between $21.12 and $48.13, for total proceeds of $766,036.

68.     During the same period, DeStefano sold 26,000 shares of UBIA Class A common stock at prices between $21.56 and $48.40, for total proceeds of $798,473.

69.     Neither Jesky nor DeStefano sold these UBIA shares at the registration statement's fixed offering price of $3.70 per share, nor did they offer to sell shares at that fixed price.

70.     According to the registration statement, including in the section regarding the financial interest of counsel in the offering, Jesky and DeStefano had a combined $266,400 interest in the offering (72,000 shares at $3.70 per share).  However, by selling shares at significantly higher market prices (in some cases more than 10 times higher than the fixed price required by the registration statement), Jesky and DeStefano's actual interest in the offering turned out to be significantly greater – more than $1.5 million – even though they were not able to sell all of their shares prior to the trading suspension.

71.     On January 8, 2018, the Commission suspended trading in the securities of UBIA. The Commission's order (available at https://www.sec.gov/litigation/suspensions/2018/34-82452-o.pdf) stated: "It appears to the Securities and Exchange Commission that there is a lack of accurate information concerning the securities of [UBIA] because of (i) questions regarding the accuracy of assertions, since at least September 2017, by UBIA in filings with the Commission regarding the company's business operations; and (ii) concerns about recent, unusual and unexplained market activity in the Company's Class A common stock since at least November 2017."

72.     Because these offers and sales of UBIA stock by Jesky and DeStefano were not made at the fixed price set forth in the UBIA December 22, 2017 Form S-1 registration statement, the transactions Jesky and DeStefano did engage in were not registered pursuant to that registration statement.  Nor were the transactions they did engage in registered pursuant to any other valid registration statement.

73.     The UBIA securities sold by Jesky and DeStefano between December 26, 2017 and January 8, 2018 were sold through the facilities of the United States, specifically the OTC inter-dealer market, which consist of numerous broker-dealer firms that execute transactions through interstate telecommunications networks.

### CLAIM ONE

74.     The Commission realleges paragraphs 1 through 73 above.

75.      Defendants Jesky and DeStefano each violated Section 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) & (c)].

76.     From approximately December 26, 2017 through January 5, 2018, these Defendants, directly or indirectly: (i) made use of the means and instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement was in effect; and (ii) made use of means and instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

I.

Enter judgment in favor of the Commission finding that the Defendants each violated Section 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) & (c)] as alleged in this Complaint;

II.

Permanently enjoin the Defendants, their agents, servants, employees, attorneys-in-fact and assigns, and those persons in active concert or participation with them or who receive actual

notice of the injunction by personal service or otherwise, from violating Section 5(a) and (c) of

the Securities Act [15 U.S.C. § 77e(a) & (c)];

III.

Order the Defendants to disgorge, with prejudgment interest thereon, all proceeds and

commissions generated by the Defendants' sales of UBIA securities, and such future amounts as

the Court may find appropriate;

IV.

Order the Defendants to pay civil money penalties pursuant to Section 20(d) of the

Securities Act [15 U.S.C. §77t(d)]; and

V.

Grant such further relief as the Court deems just and proper, including such equitable

relief as may be appropriate or necessary for the benefit of investors.


Dated:  New York, NY                     Respectfully submitted,
        July 2, 2018


                                         _____
                                         Marc P. Berger
                                         Lara Shalov Mehraban
                                         Robert A. Cohen
                                         Michael D. Paley
                                         Kevin P. McGrath
                                         Tracy E. Sivitz
                                         John P. Lucas
                                         SECURITIES AND EXCHANGE COMMISSION
                                         New York Regional Office
                                         200 Vesey Street, Suite 400
                                         New York, N.Y. 10281
                                         (212) 336-0533
                                         mcgrathk@sec.gov


16