

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
NEW YORK REGIONAL OFFICE
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NEW YORK 10281-1022

KEVIN P. MCGRATH
(212) 336-0533
mcgrathk@sec.gov

July 6, 2018

**BY UPS OVERNIGHT MAIL
AND BY ECF**

The Honorable John F. Keenan
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1930
New York, NY  10007-1312

> Re:   **SEC v. T. J. Jesky, Esq. and Mark DeStefano
> 18-cv-5980 (JFK)**

Dear Judge Keenan:

Plaintiff Securities and Exchange Commission (the "Commission") respectfully submits this letter seeking approval of the parties' proposed settlement. The Commission has reached a proposed settlement with Defendants T. J. Jesky, Esq. and Mark DeStefano that would fully resolve this case, which was filed on July 2, 2018 and assigned to Your Honor on July 3, 2018. Copies of the executed Consents of each Defendant and proposed Judgments have been emailed to the Orders and Judgments Clerk and are enclosed herewith. The Commission respectfully requests approval and entry of the proposed Judgments.

I.      Background

The Complaint, a courtesy copy of which is enclosed, charges the Defendants with engaging in illegal offers and sales of unregistered securities in violation of Section 5(a) and 5(c) of the Securities Act of 1933 [15 U.S.C. § 77e(a) & (c)] ("Section 5(a) and 5(c)"). As set forth in more detail in the Complaint, in October 2017, Defendants arranged to receive shares of UBI Blockchain Internet Ltd. ("UBIA"), in exchange for legal services rendered by Jesky's law firm, including the firm's preparation of a registration statement with the Commission. Pursuant to that registration statement, UBIA sought to register the public resale of certain shares, including the shares issued to Jesky and DeStefano. The registration statement prepared by the Jesky firm required that all Class A shares sold pursuant to the registration statement had to be sold at a fixed price of $3.70 per share.

Inexplicably, UBIA's stock experienced a dramatic increase after the Defendants acquired their shares, rising from approximately $4.00 per share on November 20, 2017 to a high of approximately $115.00 on December 15, 2017, even though UBIA had not issued any news releases that would have explained such an increase.

July 6, 2018

As soon as the registration statement was declared effective on December 22, 2017, the Defendants began to unlawfully sell their shares at prices far in excess of the $3.70 price required by the registration statement.  Between December 26, 2017 and January 5, 2018, Jesky sold 24,995 Class A UBIA shares into the public over-the-counter ("OTC") market at prices between $21.12 and $48.13, for total proceeds of $766,036.00 and ill-gotten gains of $673,554.00 (the difference between total proceeds and proceeds if he had sold his shares at the $3.70 per share required price). DeStefano sold 26,000 Class A UBIA shares in the OTC market at prices between $21.56 and $48.40, for total proceeds of $798,473.00 and ill-gotten gains of $702,273.00.

The Defendants' unlawful sales only stopped when the Commission suspended trading in UBIA stock on January 8, 2018, based on questions about the accuracy of assertions in UBIA's SEC filings and the recent, unusual market activity in the company's stock.

Defendants' offers and sales of UBIA securities between December 26, 2017 and January 5, 2018, none of which were made at the fixed price of $3.70 required by the registration statement filed with the Commission, were in violation of Sections 5(a) and (c).

II.      The Proposed Judgments

Without admitting or denying the allegations in the Complaint, the Defendants have consented to their respective proposed Final Judgments, which would:

(1) permanently enjoin each Defendant from violations of Sections 5(a) and 5(c);

(2) order Jesky to pay disgorgement in the amount of $673,554.00, and order DeStefano to pay disgorgement in the amount of $702,273.00, representing the profits each Defendant gained as a result of the conduct alleged in the Complaint;

(3) order Jesky to pay a civil money penalty of $92,482.00 and order DeStefano to pay a civil money penalty of $96,200.00 pursuant to Section 20(d) of the Securities Act; and

(4) order that monies contained in Defendants' specified brokerage accounts be turned over to the SEC in satisfaction of Defendants' disgorgement and civil money penalty obligations.

III.     The Proposed Settlements Are Fair and Reasonable

We respectfully submit that the proposed settlements are fair and reasonable.  The permanent Section 5 injunctions will help protect the public against future violations by the Defendants: Jesky, an experienced attorney and DeStefano, Jesky's law firm business affairs manager and the former controlling shareholder of UBIA's predecessor entity (*see, e.g., SEC v. Mgmt. Dynamics, Inc.* 515 F.2d 801, 807 (2d Cir. 1975)("the commission of past illegal conduct is highly suggestive of the likelihood of future violations" as a matter of law); *SEC v. Kokesh*, 834 F.3d 1158, 1162 (10th Cir. 2016), *rev'd on other grounds Kokesh v. SEC*, 137 S. Ct. 1635 (2017) (one purpose of "obey the law" injunctions "is to protect the public by giving Defendant an added incentive to conduct himself in accordance with the securities laws: violating the injunction would subject him to the court's contempt power ...."); the disgorgement deprives Defendants of their ill-

July 6, 2018

gotten gains (*see, e.g., SEC v. Illarramendi*, 260 F.Supp. 3d 166, 181 (D. Conn. April 13, 2017)(quoting *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3rd Cir. 1997)("Disgorgement is an equitable remedy designed to deprive the wrongdoer of his unjust enrichment and to deter others from violating the securities laws.")); and the penalty amounts, which were arrived at through negotiations between the parties, are within the Commission's statutory authority (*see* Section 20(d)(2)(A) of the Securities Act of 1933 [15 U.S.C. § 77t(d)(2)(A)] and 17 C.F.R. 201.1001, Tbl. I, col. vi (adjusted for inflation)), constitute approximately 14% of each Defendant's ill-gotten gains, penalize the Defendants for their violations and will deter Defendants and others from future violations (*see, e.g., SEC v. Gruss*, 245 F.Supp. 3d 527, 603 (S.D.N.Y. March 28, 2017)("Civil penalties serve the dual purpose of penalizing the defendant for past violations and deterring him from future misconduct.")).[1]

The Commission is prepared to provide any additional information that the Court may request regarding the statutory, legal and/or factual basis for the terms of the proposed Final Judgments.

If the proposed Judgments are acceptable to the Court, the Commission requests that they be entered and docketed together with the executed Consents thereto.

Respectfully submitted,

Kevin P. McGrath
Senior Trial Counsel
Securities and Exchange Commission

cc: Keith M. Woodwell, Esq. (counsel for Defendants)(via email)

---

[1] The Commission submits that while prejudgment interest is also appropriate here, the prejudgment interest amount is zero given that the Defendants' profits were effectively frozen shortly after receipt.

3